IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | No. 1:24-CR-300-RBW |
| TIMOTHY FINNEGAN, | § § | |

## SENTENCING MEMORANDUM

TO THE HONORABLE REGGIE B. WALTON, SENIOR UNITED STATES DISTRICT JUDGE:

Timothy Finnegan, by and through his counsel, hereby respectfully requests that this Court impose a 10-day prison sentence for his misdemeanor conduct related to the events of January 6, 2021. Mr. Finnegan's misdemeanor offenses are not covered by the U.S. Sentencing Guidelines, so there is no proposed Guidelines range, but the statutory maximum available prison sentence is six months. Mr. Finnegan's conduct and low-level criminal history, however, makes him more like the majority of misdemeanants involved in January 6, who have received non-carceral or brief incarceration sentences.

I.    PROCEDURAL HISTORY

In May 2023, Mr. Finnegan voluntarily met with FBI agents in New Jersey. He confirmed his presence at the Capitol on January 6, 2021. He stated he went to the Capitol protest but did not attend to engage in violence. Mr. Finnegan provided consent for the FBI agents to search his phone. He provided the videos he recorded to the agents. He offered to the agents his hat and jacket from the day-of as evidence. Then, nearly a year later, he was arrested in the District of New Jersey pursuant to a criminal complaint charging him with misdemeanors in violation of 18 U.S.C. § 1752 (a)(1) and (2) and 40 U.S.C. § 5104(e)(2)(D) and (G). The government did not seek pretrial

detention. He was released on conditions and has been compliant with those conditions since his release.

Mr. Finnegan pleaded guilty to two misdemeanor counts of disorderly conduct and parading, in violation of 40 U.S.C. §§ 5104(e)(2)(D), and (G). *See* Doc. No. 31. He accepts responsibility for and acknowledges the wrongfulness of his actions on January 6, 2021. He travelled with his then-girlfriend, Michelle Herron, from New Jersey to Washington D.C., to hear former President Donald Trump speak. *See* PSR ¶ 12. After the speech, he walked Ms. Herron back to their hotel. He then returned to the Capitol to protest the government's actions. *See* PSR ¶ 12. Mr. Finnegan takes responsibility and has pleaded guilty, but he was not in any way an organizer, a violent participant, or otherwise among the most culpable participants in the events of January 6. It is not alleged that he vandalized the Capitol building, that he was among the initial entrants, or that he committed any acts of violence or even aggressive acts towards police or others. To the contrary, he was reportedly inside of the Capitol building for 31 minutes before he left on his own accord. *See* Doc. No. 31. Mr. Finnegan regrets his actions, but as he has some minor criminal history, he accepts that a brief carceral sentence is appropriate in this case.

II.     APPLICATION OF THE SENTENCING FACTORS

Congress has directed courts to impose sentences "sufficient but not greater than necessary" to comply with the four statutorily defined purposes in 18 U.S.C. § 3553(a)(2):

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

To achieve these purposes, courts are directed to consider: the nature and circumstances of the offense and the history and characteristics of the defendant; the available sentences; a policy

favoring uniformity in sentences for defendants who commit similar crimes; and the need to provide restitution to victims. *See* 18 U.S.C. § 3553(a)(1), (3)-(7).

Mr. Finnegan's history and characteristics support a 10-day sentence. *See* 18 U.S.C. § 3553(a)(1). He was born in 1972, and grew up in a stable, middle-class family in New Jersey. *See* PSR ¶ 41. He began drinking alcohol when he was 14 and thereafter drank heavily until he was 22. *See* PSR ¶ 52. He studied computer repair in high school and began a college program. However, he dropped out of the program because he no longer wanted to work with computers. *See* PSR ¶ 55. Around the same time, he began to experience bouts of anxiety attacks. *See* PSR ¶ 48. His drinking became so heavy that he attempted suicide when he was 22. He was then hospitalized and treated for depression. *See* PSR ¶ 48. He has previously been prescribed Zoloft, lithium and Xanax, but does not currently take any mental health medication. *See* PSR ¶ 49. Mr. Finnegan's housing situation in New Jersey became unstable in November of 2024; he has since moved in with his parents who live in the retirement community of The Villages in Florida. *See* PSR ¶ 44. He does not drive and suffers from back pain, making his recent employment, roofing and painting work, a significant improvement in his life. *See* PSR ¶ 57. Mr. Finnegan does have some criminal history that is largely old and appears to stem from his history of alcohol use. *See* PSR ¶ Part B. Mr. Finnegan's request for a 10-day sentence of incarceration on each count is in recognition of this aggravating factor.

The nature and circumstances of Mr. Finnegan's offense also support a brief carceral sentence. *See* 18 U.S.C. § 3553(a)(1). He acknowledges his regrettable conduct on January 6, and recognizes that the broader January 6 incident has rightly merited serious penalties for the most culpable offenders. The Government has also elsewhere proposed a series of metrics for assessing the relative culpability of January 6 defendants. *See, e.g.*, *United States v. Buckler*, No. 1:22-CR-

162(TNM), Doc. No. 26 at 26. These include: (1) whether, when, and how the defendant entered the Capitol building (2) whether the defendant encouraged violence; (3) whether the defendant encouraged property destruction; (4) defendant's reaction to acts of violence or destruction; (5) whether, during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside of the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the defendant cooperated with, or ignored commands from police officers; and (9) whether the defendant demonstrated sincere remorse and contrition. Of course, these metrics are non-exhaustive, and reflect the views of the Government, but they support a brief carceral sentence for Mr. Finnegan.

Mr. Finnegan is responsible for his actions, but was a follower, and not among the most culpable participants on January 6. He arrived to D.C. to hear a political leader speak and to protest – not to riot. He wore regular civilian clothing; he did not bring weapons of any kind – makeshift or actual. Mr. Finnegan did not arrive early enough to witness the barricades being removed. He did not break into the Capitol building; he spent a very limited amount of time inside and did not reach the Senate floor like more culpable offenders. He did not encourage or participate in violence; he did not vandalize the Capitol; and he did not destroy evidence. He willingly left and was by all accounts cooperative. Because he committed no actual violence or damage, did not organize the events of the day, and did not spend a lengthy amount of time in the Capitol building, Mr. Finnegan is considerably less culpable than the vast majority of those convicted in connection with the events of January 6.

As part of this Court's consideration of Mr. Finnegan's relative culpability, and its need to avoid sentencing disparities, it should consider other January 6 sentencing practices. *See* 18 U.S.C. § 3553(a)(6). In a District with as many judges as this one, there can be no definitive sentence that

addresses the unique facts and circumstances of each case. Sentences imposed in these cases vary from short terms of probation to periods of incarceration, and everything in between. The majority of individuals charged with misdemeanors arising out of January 6 have received probation. A review of the chart the government compiles showing sentences to date in the January 6 cases, shows that well over half of the individuals charged with misdemeanors have received short, or no terms of incarceration. [District of Columbia | Capitol Breach Cases | United States Department of Justice.](#) Those that do receive jail time appear to have had aggravating circumstances, criminal history, or additional charges. Because of the nature of Mr. Finnegan's criminal history, he concedes that some jail time may be appropriate. However, giving Mr. Finnegan the same prison sentence as some of the most culpable individuals would incorrectly indicate that he is also among the most culpable of § 5104(e)(2) offenders, despite the mitigating circumstances identified above. A sentence of 10 days will adequately address the § 3553 factors and distinguish Mr. Finnegan from more culpable defendants who received more jail time.

      Mr. Finnegan entered a guilty plea to the only offer the government tendered, that is, to two petty misdemeanor counts: one count of Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. 5104(e)(2)(G), and one count of Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. 5104(e)(2)(D). Prior to the D.C. Circuit's opinion, *United States. v. Little*, 78 F.4th 453 (D.C. Cir. 2023), which held that split sentences cannot be imposed for petty offenses, the government's standard plea offer for defendants similarly situated to Mr. Finnegan was to a single count of Parading and Picketing. Post *Little*, the government has required defendants to plead guilty to two counts. That is because based on the *Little* decision, the government would be unable to request a sentence of both probation and incarceration for a single petty offense.

In *Little*, the D.C. Circuit agreed with the defense that a split sentence for a petty offense "conflicts with the statutory scheme" Congress laid out which made probation and imprisonment separate options for separate offenses. *Id*. In so holding, the D.C. Circuit was clear that a sentence of imprisonment and probation would "subvert the Sentencing Reform Act's general rule that probation is a standalone sentence, combinable only with a fine, not with imprisonment." *Id*. at 458. Despite the D.C. Circuit's clear instruction that this type of sentence was not contemplated by Congress when it created the petty offense framework, the government has sought in many cases an end-run around the holding in *Little*. If the government does so in this case, the Court should reject the government's invitation to impose an enhanced punishment on Mr. Finnegan not based on his culpability but based on the timing of the government's decision to charge him. The happenstance of when he was charged should not dictate his sentence.

Moreover, post *Little*, for the vast majority of cases of individuals in Mr. Finnegan's position, i.e., with 2 petty offenses, Judges have declined to impose two separate punishments for offenses that are virtually identical. *See e.g., United States v. Cameron Campanella*, 23-cr-231 (ACR) (12 months of probation on each count, concurrent); *United States v. David Tyner*, 23-cr-361-1 (RDM) (36 months probation with 60 days home detention on both counts, concurrent) *United States v. Christian Tyner*, 23-361-2 (RDM) (24 months of probation with 30 days home detention on both counts, concurrent); *United States v. Juan Rodriguez*, 23-cr-270 (ADM) (30 days incarceration on both counts, concurrent; no probation); *United States v. Nhi Ngoc Mai Le*, 23-cr-317 (TSC) (10 days incarceration on both counts, concurrent; no probation); United States v. *Thomas Pooler*, 24-cr-75 (TNM) (12 months of probation on each count, concurrent); *United States v. Nicholas Von Keudell*, 23-cr-221 (CRC) (24 months of probation on each count,

concurrent); *United States v. Steven Hanna*, 23-cr-272 (TJK) (24 months of probation with 45 days home detention on each count, concurrent).

For the reasons stated above, Mr. Finnegan respectfully submits that a sentence of 10 days, on each count, ran concurrently, is sufficient, but not greater than necessary, to comply with § 3553.

Respectfully submitted,

/s/ *Andrea G. Aldana*
ANDREA G. ALDANA
Assistant Federal Public Defender
22 S. Clinton Ave
Station Plaza 4, 4th Floor
Trenton, NJ 08609
Email: andrea_aldana@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on the January 13, 2025, I electronically filed the foregoing with the Clerk of Courts using the CM/ECF, which will send notification of such filing to the following:

AUSA Anna Krasinski
DOJ-USAO

/s/ *Andrea G. Aldana*
ANDREA G. ALDANA